IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ATHENA S.,[1]　　　　　　　　　　　　　　No. 3:17-cv-01382-HZ

　　　　　　Plaintiff,　　　　　　　　　　　OPINION & ORDER

　　v.

Commissioner, Social Security
Administration,

　　　　　　Defendant.

Merrill Schneider
Schneider Kerr & Robichaux
P.O. Box 14490
Portland, OR 97293

　　　Attorney for Plaintiff

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for non-governmental party's immediate family members.

1 - OPINION & ORDER

Billy J. Williams
United States Attorney
Renata Gowie
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, OR 97204

Martha A. Boden
Special Assistant United States Attorney
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104

 Attorneys for Defendant

HERNÁNDEZ, District Judge:

 Plaintiff brings this action for judicial review of the Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). Because the ALJ failed to evaluate the medical opinion of a treating physician, Court REVERSES the Commissioner's decision and REMANDS this case for further administrative proceedings.

## BACKGROUND

 Plaintiff was born on July 13, 1958 and was fifty years old on December 31, 2008, the alleged disability onset date. Tr. 20, 181.[2] Plaintiff last met the insured status requirements of the Social Security Act ("SSA" or "Act") on September 30, 2012. Tr. 22. Plaintiff has some college education and past relevant work experience as a receptionist, claims service representative, and telemarketer. Tr. 29, 235. Plaintiff claims she is disabled based on: degenerative disease in her spine and joints; musculoskeletal conditions; tendinopathy; seizure disorder; vertigo; and depression. Tr. 22, 325, 352, 358. Plaintiff's benefits application was denied initially on

---

[2] Citations to "Tr." refer to the administrative trial record filed here as ECF No. 13.

December 16, 2013, and upon reconsideration on May 14, 2014. Tr. 20, 110–15, 130–32. A hearing was held before Administrative Law Judge Vadim Mozyrks on February 8, 2016. Tr. 35–80. ALJ Mozyrsk issued a written decision on March 30, 2016, finding Plaintiff not disabled. Tr. 20–30. The Appeals Council declined review, rendering ALJ Mozyrsk's decision the Commissioner's final decision that Plaintiff now challenges in this Court. Tr. 1–6.

Notably, Plaintiff's separate claim for Supplemental Security Income ("SSI") was granted by the Commissioner. Tr. 116–129. The Commissioner determined that, as of August 2013, Plaintiff was disabled and entitled to benefits. Tr. 116. The central issue here is whether the ALJ properly determined that Plaintiff was not disabled during the relevant time period: December 31, 2008, through September 30, 2012.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 22.

At step two, the ALJ determined that Plaintiff "had the following severe impairments: degenerative disc disease, bilateral knee degenerative joint disease, left upper extremity tendinopathy and degenerative joint disease, seizure disorder, and obesity." *Id.* The ALJ also determined that Plaintiff's depression was not severe. Tr. 22–24.

At step three, the ALJ determined that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed

impairments. Tr. 24. Particularly, the ALJ found that Plaintiff's condition did not meet the requirements of Listing 11.03 for non-convulsive epilepsy. *Id.*

Before proceeding to step four, the ALJ found that Plaintiff had the RFC to perform sedentary work with the following exceptions:

> She could lift and carry, and push and pull, up to ten pounds occasionally and less than ten pounds frequently. She could sit up to six hours in an eight-hour day. She could stand and walk up to two hours total in an eight-hour day. She could occasionally reach overhead with the left upper extremity. She could occasionally, climb, balance, stoop, kneel, crouch and crawl. She could never work around unprotected heights, around heavy operating machinery or operate motor vehicles as part of her day-to-day job. She also could never work around extreme cold conditions.

Tr. 24.

At step four, the ALJ determined that Plaintiff was capable of performing past relevant work as a receptionist, claims service representative, and telemarketer. Tr. 29. Accordingly, the ALJ did not proceed to step five and concluded that Plaintiff was not disabled under the Act. Tr. 29–30.

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*,

486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

DISCUSSION

Plaintiff raises six issues on appeal. She argues that the ALJ erred by: (1) improperly rejecting the medical opinion of Dr. John McBurney; (2) failing at step two to find Plaintiff's vertigo and depression severe; (3) failing at step three to find that Plaintiff's impairments met Listing 11.03 for non-convulsive epilepsy; (4) improperly discounting the lay testimony of Plaintiff's friend Poni Scofield; (5) improperly discounting Plaintiff's subjective symptom testimony; and (6) failing to conduct adequate analysis at steps four and five. The Court will discuss each issue in turn.

I.   **Medical Opinion Testimony**

On February 1, 2016, Plaintiff's treating neurologist and epileptologist, Dr. McBurney, opined that Plaintiff's seizures would affect her ability to work. Tr. 538–41. Dr. McBurney also opined that Plaintiff's condition satisfied the requirements of Listing 11.03 for non-convulsive epilepsy. Tr. 540–41. The ALJ did not consider Dr. McBurney's opinion when he issued his written decision finding Plaintiff not disabled. Tr. 28–29. Defendant acknowledges that the ALJ did not expressly discuss Dr. McBurney's opinion. Def.'s Br. 6, ECF 15. Instead, Defendant argues that the ALJ implicitly adopted it. *Id.*

Social security law recognizes three types of physicians: (1) treating; (2) examining; and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. §§ 404.1527(c)(1)–(2), 416.927(c)(1)–(2). And, more

weight is given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012.

If the treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If the treating physician's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing" reasons supported by substantial evidence in the record. *Ghanim*, 763 F.3d at 1160–61. Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject that opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the record. *Id.* at 1161; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Moreover, the district court cannot affirm the Commissioner's decision on grounds that the ALJ did not invoke. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (citations omitted); *see also Trevizo v. Comm'r*, 871 F.3d 664, 677 n.4 (9th Cir. 2017) (holding that the district court erred in looking beyond the ALJ's stated reasons and explanation to support the ALJ's opinion); *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (stating that district courts cannot affirm the agency on grounds not invoked by the ALJ without violating the *Chenery* rule).

In this case, the parties agree that the ALJ did not discuss Dr. McBurney's opinion. Even accepting Defendant's argument that the ALJ implicitly considered Dr. McBurney's opinion, the ALJ nevertheless failed to carry its burden of setting forth specific and legitimate reasons supported by substantial evidence for rejecting the opinion. "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one

medical opinion over another, he errs." *Garrison*, 759 F.3d at 1012 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). Further, Defendant's argument that the ALJ implicitly adopted Dr. McBurney's opinion is unpersuasive. Dr. McBurney's treating relationship with Plaintiff began in 2015. Tr. 538. By that time, Plaintiff's separate application for SSI benefits had been granted. Tr. 116–129. The ALJ issued its written decision in this case in 2016. The ALJ wrote: "Although the claimant may now have disabling functional limitations, the evidence does not support the alleged severity of her impairments during the relevant period." Tr. 25. In other words, Defendant contends that the ALJ implicitly adopted Dr. McBurney's opinion by acknowledging that Plaintiff may have become disabled after the relevant period. However, Dr. McBurney opined that Plaintiff's condition began by at least 2008 or earlier. Tr. 540. He wrote that Plaintiff first met the requirements of Listing 11.03 when she was eighteen years old. Tr. 541. Therefore, the ALJ could not have implicitly adopted Dr. McBurney's opinion because the ALJ reached the opposite conclusion, finding that Plaintiff had not met Listing 11.03's requirements. Tr. 24.

The Court finds that the ALJ erred by failing to properly account for Dr. McBurney's medical opinion. Pursuant to sentence four of 42 U.S.C. § 405(g), the Court reverses the Commissioner's decision denying Plaintiff's benefits application and remands this case for further administrative proceedings. On remand, the ALJ is instructed to determine how much weight, if any, to accord the opinion. To provide further guidance for proceedings on remand, the Court will analyze the remainder of Plaintiff's challenges.

## II.     Plaintiff's Non-Severe Impairments

Plaintiff contends that the ALJ erred by finding her vertigo and depression non-severe. Tr. 22–24. The ALJ considers the severity of the claimant's impairment(s) at step two. 20 C.F.R.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement, or a combination of impairments that is severe and meets the duration requirement, the claimant is not disabled. *Id.*

A severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" are the abilities and aptitudes necessary to do most jobs, including physical functions such as walking, standing, sitting, and lifting, and mental functions such as understanding, carrying out, and remembering simple instructions. 20 C.F.R. §§ 404.1522(b), 416.922(b). In Social Security Ruling ("SSR") 85-28, the Commissioner explained that "an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities." 1985 WL 56856, at *3, (Jan. 1, 1985) (quoting 20 C.F.R. 404.1521(a) and 416.921(a)); *see also* SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996) ("[A]n impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.").

The Ninth Circuit has explained that the step two severity determination is expressed "in terms of what is 'not severe.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The ALJ is required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity. *Id.* Importantly, as the Ninth Circuit noted, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (citing *Yuckert*, 482 U.S. at 153–54).

"[T]he severity regulation is to do no more than allow the [Social Security Administration] to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working." SSR 85-28, 1985 WL 56856, at *2,

9 - OPINION & ORDER

(Jan. 1, 1985) (internal quotation omitted). Therefore, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting SSR 85-28). The court's task in reviewing a denial of benefits at step two is to "determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Id.*

Where the ALJ fails to list a medically determinable impairment at step two, but nonetheless considers the limitations posed by the impairment in the RFC, any error at step two is harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

**A.**  *Vertigo*

Plaintiff claims that the ALJ failed to account for her vertigo with dizziness and difficulty balancing. Plaintiff cites to a single page in the medical record to support her claim. A medical progress note written on August 30, 2011 states that among Plaintiff's concerns, she expressed that she had been experiencing vertigo and dizziness, and she was unsure if it was the result of her falling off of her bicycle three days before. Tr. 352. Plaintiff does not explain how this purported severe impairment limits her capacity to work other than causing her difficulty in balancing. *See* Pl.'s Br. 11–12, ECF 14.

The Court notes that on the next page of the progress note, under the "assessment/plan" heading, the physician found that Plaintiff's dizziness was consistent with her previous benign positional vertigo diagnosis. Tr. 353. The physician concluded that no action was necessary that day, and wrote that Plaintiff should call if her condition worsened. *Id.* This medical record contradicts rather than supports Plaintiff's position.

The Court finds that the ALJ did not err in concluding that Plaintiff's vertigo was non-severe at step two. In any event, any error at step two was harmless given that the ALJ found other impairments severe that would impose greater restrictions than Plaintiff's unspecified vertigo/dizziness. Tr. 22. The RFC accounted for any impairment stemming from Plaintiff's vertigo/dizziness by restricting her to sedentary work, limiting her to occasional balancing, finding that she could never work around unprotected heights or operating heavy machinery, and she could not operate motor vehicles. Tr. 24.

**B.**     ***Depression***

Next, Plaintiff challenges the ALJ's finding that her depression was not severe. Tr. 22–24. The ALJ noted that Plaintiff had not been treated for any mental impairment during the relevant time period and that there was no evidence to establish a medically determinable impairment. *Id.* Applying the four "paragraph B" criteria from 20 C.F.R., Part 404, Subpart P, Appendix 1, the ALJ found that Plaintiff had only mild limitations in her activities of daily living, social functioning, and concentration, persistence, or pace. Tr. 23. Plaintiff had no episodes of decompensation. Accordingly, the ALJ found Plaintiff's depression non-severe. *Id.*

Furthermore, the ALJ considered medical evidence from Dr. Kimberly Goodale, PsyD. *Id.* Dr. Goodale performed a psychodiagnostic evaluation of Plaintiff in January 2013. *Id.* She concluded that Plaintiff had not exhibited any symptoms of anxiety or dysphoria. *Id.* The ALJ noted that Dr. Goodale was the only mental health professional that evaluated Plaintiff during the relevant period, and her lack of a depression diagnosis was consistent with the record as a whole. *Id.*

Here too, Plaintiff generally argues that her depression limited her ability to perform basic work functions. Pl.'s Br. 12. Plaintiff does not explain what those limiting effects might be.

Instead, she cites to two pages in the administrative record. First, Plaintiff relies on Dr. Goodale's evaluation. Dr. Goodale noted that Plaintiff described her own mood as depressed. Dr. Goodale wrote "[t]he possibility of a low grade depression or dysthymia should be further assessed." Tr. 325. Once more, Dr. Goodale did not diagnose Plaintiff with depression. Second, plaintiff relies on an opaque progress note written on March 10, 2010, merely stating that Plaintiff is a fifty-one year old female with seizure disorder, obesity, and depression. Tr. 358.

The Court finds that the ALJ did not err in concluding that Plaintiff's depression was non-severe at step two. Plaintiff carries the burden of demonstrating that her impairments have a limiting effect on her abilities to perform basic work activities. Here, the ALJ relied on substantial evidence in the medical record showing that Plaintiff's depression did not have any significant limiting effect.

### III.   Listing 11.03, Non-Convulsive Epilepsy

Independent from Plaintiff's challenge regarding Dr. McBurney's testimony, she also claims that the ALJ also erred by concluding that her impairments did not meet the requirements of Listing 11.03. As discussed above, the Court finds that the ALJ erred by failing to weigh Dr. McBurney's opinion. *See Supra* Part I. Once more, Dr. McBurney opined that Plaintiff met Listing 11.03's requirements during the relevant period. The Court's analysis above applies with equal force here and the Court directs the ALJ on remand to consider—in light of Dr. McBurney's opinion—whether Plaintiff's impairments meet or medically equal the requirements for Listing 11.03.

### IV.   Lay Witness Testimony

Next, Plaintiff argues that the ALJ improperly weighed the testimony of her friend and landlord Ms. Scofield. Pl.'s Br. 13–14. Ms. Scofield submitted a third-party function report on

November 12, 2013. Tr. 268–75. Ms. Scofield stated, in relevant part, that Plaintiff has trouble concentrating, cannot follow directions or complicated statements well, has memory and concentration issues, and is "often just generally 'foggy.'" Tr. 268–69, 275.

The ALJ gave Ms. Scofield's testimony partial weight. Tr. 28. The ALJ wrote:

> Her observations regarding the claimant's activities of daily living are generally consistent with the record, and show the claimant was quite self-sufficient and active. However, her statements regarding the claimant's cognitive functioning are inconsistent with much of the record. As indicated above, the claimant's treatment history does not support a cognitive and/or memory deficit at the time of her date last insured.

*Id.*

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). Lay witness testimony cannot be disregarded without comment and the ALJ must give germane reasons for discounting such testimony. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Germane reasons must be specific. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Stout*, 454 F.3d at 1053). Germane reasons for discounting lay witness testimony include: conflicts with medical evidence and inconsistency with the plaintiff's daily activities. *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001). Another germane reason to discredit lay testimony is that it is substantially similar to the claimant's validly discredited allegations. *Valentine*, 574 F.3d at 694.

Here, the ALJ provided germane reasons for according Ms. Scofield's testimony partial weight. The ALJ found that medical evidence did not support finding that Plaintiff's cognitive issues were as severe as she claimed. Tr. 27–28. For example, Dr. Goodale's examination

showed that Plaintiff had no significant cognitive impairment. Tr. 27. The ALJ also found that Plaintiff's activities of daily living showed that "her cognitive abilities were quite intact as she was able to perform several complex tasks." *Id.* Both reasons were specific, supported by evidence in the record, and germane to Ms. Scofield's testimony. Accordingly, the ALJ's treatment of Ms. Scofield's testimony was not in error.

## V.     Plaintiff's Subjective Symptom Testimony

Plaintiff claims that the ALJ improperly discounted her subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (quotation and citation omitted) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons"); *see also Molina*, 674 F.3d at 1112 (internal quotation marks omitted) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms."). An ALJ must include specific findings supported by

substantial evidence and a clear and convincing explanation for discounting a claimant's subjective symptom testimony.

When evaluating subjective symptom testimony, the ALJ may consider a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's "daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

As a threshold matter, the Court notes that the ALJ applied the wrong legal standard for evaluating Plaintiff's subjective symptom testimony. The ALJ analyzed Plaintiff's testimony using SSR 96-7p which was repealed and replaced by SSR 16-3p. This is noteworthy because SSR 16-3p eliminated the term "credibility" from the analysis and clarified that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, at *1. The Ninth Circuit has recognized that SSR 16-3p represents a stylistic change to prior rulings. *Trevizo*, 871 F.3d at 678 n.5 (quoting SSR 16-3p). The court in *Trevizo* explained that SSR 16-3p "makes clear what our precedent already requires:"

> that assessments of an individual's testimony by an ALJ are designed to "evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has medically determinable impairment(s) that could reasonably be expected to produce those symptoms," and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Id.* (quoting SSR 16-3p). SSR 16-3p was republished to clarify that it applies to all determinations and decisions made on or after March 28, 2016. SSR 16-3p, at *1. The ALJ's

decision in this case was issued on March 30, 2016. Tr. 30. Therefore, the ALJ should have relied on SSR 16-3p when evaluating Plaintiff's subjective symptom testimony.

Even though the ALJ erred by applying SSR 96-7p, the Court finds that the ALJ's analysis nevertheless satisfies the standard set forth in SSR 16-3p. Here, the ALJ did not focus on Plaintiff's overall character as a basis for finding her incredible and discounting her testimony. Rather, the ALJ limited his evaluation to Plaintiff's statements about her symptoms and evidence in the record relevant to her impairments. *See* SSR 16-3p, at *11. The ALJ provided clear and convincing reasons supported by substantial evidence in the record for rejecting Plaintiff's specific symptom allegations. Tr. 25–27. For example, Plaintiff complained of impairments stemming from her musculoskeletal conditions. The ALJ noted that Plaintiff received only conservative treatment for those conditions and was prescribed diet and exercise. Tr. 25–26. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). Further, routine medical exams produced no significant findings and Plaintiff's back pain was alleviated by weekly sessions with a chiropractor. Tr. 26; *Batson v. Comm'r*, 359 F.3d 1190, 1196–97 (9th Cir. 2004).

Likewise, regarding Plaintiff's seizures, the ALJ found that the medical record showed the condition was controlled with minimal treatment during the relevant period. Tr. 27, 352, 361. An August 2011 progress note showed that Plaintiff had not had a seizure in three years. Tr. 352. A progress note from September 19, 2012, showed that Plaintiff had her first seizure episode in seven years. Tr. 343. Similarly, regarding Plaintiff's cognitive impairments, the ALJ noted that Dr. Goodale's examination of Plaintiff showed that she was generally present and alert. Tr. 323–25. Dr. Goodale also opined that Plaintiff had no significant problems in memory or information processing. Tr. 27, 325. Based on this record, the Court finds that the ALJ's reliance on objective medical evidence and Plaintiff's conservative course of treatment was proper.

The Court does, however, agree with Plaintiff that the ALJ's reliance on Plaintiff's activities of daily living as a basis for discounting her symptom testimony was in error. The ALJ wrote that Plaintiff's activities belied her claimed limitations. For example, the ALJ noted that she was able to do household chores, go grocery shopping, run errands, ride a bike, and garden. Tr. 27. The ALJ also noted that Plaintiff read books, watched movies, knitted, and used a computer. *Id.* The ALJ does not explain how these activities are inconsistent with Plaintiff's specific symptom testimony. The Ninth Circuit has cautioned ALJs on this topic, explaining that claimants need not be "utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Smolen*, 80 F.3d at 1287 n.7; *Molina*, 674 F.3d at 1112–13 ("[A] claimant need not vegetate in a dark room in order to be eligible for benefits . . . .").

Even though the ALJ's reliance on Plaintiff's daily activities of living was in error, the Court finds that the ALJ's other reasons for discounting Plaintiff's symptom testimony are sufficient to uphold the ALJ's overall symptom evaluation. *See Batson*, 359 F.3d at 1197 (holding that error by an ALJ as to one basis for adverse credibility determination is not fatal to the overall determination if the ALJ gave other reasons which are supported by substantial evidence in the record). Therefore, the error was harmless.

## VI. The ALJ's Analysis at Steps Four and Five

Lastly, Plaintiff argues that the ALJ erred by formulating Plaintiff's RFC based on incomplete hypotheticals posed to the vocational expert ("VE") at the administrative hearing. Specifically, Plaintiff claims that the ALJ's hypotheticals failed to include at least a sit-stand option due to her musculoskeletal impairments. Pl.'s Br. 18–19. Plaintiff also contends that when

the VE was presented with more complete hypotheticals, the VE testified that Plaintiff's condition would preclude her from employment. Pl.'s Br. 19; Tr. 64–69, 78–79.

The ALJ is required to consider the combined effect of all of Plaintiff's impairments, severe and not severe, on her ability to work. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); SSR 96-9p. The ALJ's hypothetical questions posed to the VE must account for limitations supported by substantial medical evidence in the record and which the ALJ has accepted as set forth in the RFC. *Cooper v. Sullivan*, 880 F.2d 1152, 1158 n.13 (9th Cir. 1989); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (stating that the ALJ need not include limitations in a hypothetical that the ALJ finds are not credible).

The Court agrees with Defendant that Plaintiff failed to identify any medical evidence supporting a sit-stand limitation. Plaintiff generally argues that she was an individual closely approaching advanced age during the relevant time frame and that the VE testified that certain limitations would be disabling. Pl.'s Br. 17–19; Pl.'s Reply Br. 7–8, ECF 16. Plaintiff does not, however, explain how the ALJ's RFC determination was incomplete or why the ALJ should have incorporated a sit-stand limitation into Plaintiff's RFC.

Moreover, Plaintiff argues that the ALJ failed to include other limitations in the RFC that the VE testified would be disabling. For example, the VE testified, in relevant part, that an individual would not be employable if that person: was limited to simple and repetitive tasks; would be off-task more than 20% of the time; and would miss two or more days of work per month. Tr. 77–79. These limitations were partially based on Plaintiff and Ms. Scofield's testimony. As discussed above, the ALJ properly discounted that testimony and was not required to rely on it when formulating Plaintiff's RFC. To the extent that the limitations omitted from Plaintiff's RFC were based on Dr. McBurney's testimony, the Court reiterates that the ALJ is

instructed on remand to evaluate Dr. McBurney's opinion and to determine whether additional limitations should be incorporated into Plaintiff's RFC.

CONCLUSION

The Commissioner's decision is reversed and remanded for additional proceedings.

IT IS SO ORDERED.

Dated this 21 day of September, 2018.

_____
MARCO A. HERNÁNDEZ
United States District Judge